## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

KATHLEEN and HAROLD BLICK,

                     *Plaintiffs,*

        v.

JP MORGAN CHASE BANK, N.A. *et al.*

                     *Defendants.*

No. 3:12–cv–00001

<u>MEMORANDUM OPINION</u>

JUDGE NORMAN K. MOON

       This matter is before the Court upon consideration of Defendants' Motion to Dismiss. (docket no. 7). This case and a related action, 3:11–cv–00081,[1] arise out of separately threatened foreclosures on two parcels of land possessed by Plaintiffs. This action involves property at 6525 Dick Woods Road, Charlottesville, VA 22903; the action captioned 3:11–cv–00081 relates to nearby property at 6527 Dick Woods Road. Defendants in both cases seek dismissal of all claims; accordingly, the Court conducted a hearing on March 7th, 2012 in Charlottesville, Virginia. For the reasons that follow, I will GRANT Defendants' Motion to Dismiss.

### I. BACKGROUND

       Plaintiffs, *pro se*, filed a "Quiet Title Action" in the Circuit Court for Albemarle County on December 14, 2011 and requested the Court "to rule on issues that cloud title to their residence located at 6525 Dick Woods Road . . . ." *See* Compl. 2 (docket no. 1 attach. 1). On

---

[1] Plaintiffs' two actions, in substance, are virtually indistinguishable. Seeking to advance identical legal theories, Plaintiffs have sued all the parties involved in two separate foreclosure actions against Plaintiffs' two separate properties. The only real differences between the two cases involve the identities of the respective Defendants, the dates of the transactions, and the addresses of properties at issue.

- 1 -

January 4, 2011, Defendants removed the case to this Court under 28 U.S.C. § 1331, the federal question statute, and 28 U.S.C. § 1332, the diversity statute. Plaintiffs have not contested the propriety of Defendants' removal. Defendants now seek full dismissal of Plaintiffs' claims.

## A. Factual Allegations

The facts are alleged as follows. On or about May 19, 2005, Plaintiff Kathleen Blick ("Mrs. Blick")—executed a Fixed/Adjustable Rate Note ("note" or "promissory note"), by which she borrowed $868,800 from a lender, Best Rate Funding Corporation ("Best Rate"), and further agreed to pay back the principal amount in full, plus interest. *See* Defs.' Mem. Ex. 1.[2] In addition to the note, Mrs. Blick and Plaintiff Harold Blick ("Mr. Blick") also executed a deed of trust, securing the note and encumbering the property. *See* Compl. Ex. 2. The deed of trust, which was recorded on June 17, 2005, *see* Compl. Ex. 2 at 20, names Palma J. Collins as the Trustee and Best Rate as the Lender. Best Rate made a Corporation Assignment of the deed of trust to Long Beach Mortgage Company ("Long Beach") on May 19, 2005 and recorded it on June 17, 2005. Compl. 4.

According to Plaintiffs, sometime after Best Rate assigned the loan to Long Beach, Long Beach proceeded to securitize the loan and pay Best Rate in full. Compl. 5. On November 6, 2008, JP Morgan Chase ("JPMC"), as Successor-in-Interest to Washington Mutual Bank ("WAMU"), as Successor-in-Interest to Long Beach Mortgage Company served Plaintiffs with a Notice of Foreclosure sale ("Notice") through the law offices of Shapiro & Burson, LLP. Compl. 4. The Notice was accompanied by an Appointment of Substitute Trustee by which the

---

[2] The Court may consider this and other documents which Plaintiffs "quoted, relied upon, or incorporated by reference in the complaint." *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) *aff'd*, 103 F.3d 351 (4th Cir. 1996). "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment."). *Id.*

Case 3:12-cv-00001-NKM-BWC   Document 23   Filed 03/27/12   Page 2 of 14   Pageid#: 316

noteholder, Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2005-3, by Washington Mutual Bank, as Successor-In-Interest to Long Beach Mortgage Company, its Attorney-in-Fact, appointed Professional Foreclosure Corporation of Virginia as Substitute Trustees. *Id.*

At some point, Plaintiffs seem to have defaulted. After the default, on January 1, 2009, WAMU and Plaintiffs agreed to a loan modification. *Id.*; Compl. Ex. 3 at 2. The loan modification was recorded in Albemarle County on February 13, 2009. *Id.* The reason for the default and the terms of the subsequent loan modification are not explained in the Complaint.

Plaintiffs evidently defaulted again. On May 17, 2011, JPMC served Plaintiffs with a Notice of Intent to Foreclose. Compl. 4. Plaintiffs disputed the debt and sent notice of their dispute to JPMC on December 5, 2011, *id.*, and filed this action shortly thereafter.

### B. Plaintiffs' Claims

Plaintiffs submit no shortage of legal theories to support their final proposition, which seems to be that because the deed of trust has been assigned and securitized, it has been paid off in full, so Plaintiffs can remain in possession of the house without having to pay any Defendant any money. At bottom, Plaintiffs ask the Court to "[d]eclare the Deed of Trust to be null and void." Compl. 21. While elsewhere in the Complaint Plaintiffs maintain that "the issue is not whether there is a debt owed, but to whom it is owed," they also claim that they are "filing this . . . [a]ction to compel all parties wishing to lay claim on the Deed of Trust to bring forth their valid proof of claim, [or] else release their claim." Compl. 6.

To begin, the Blicks claim that "there are significant outstanding issues clouding title to the Blicks' Promissory Note and Deed of Trust," and that they, "[a]s the title owner of the property, . . . have an obligation to defend their title from false or inaccurate claims." Compl. 6.

- 3 -

Most significant among these issues is the apparent fact that the original promissory note is—or at least was—missing.  Compl. 7.  Plaintiffs allege that "none of the Defendants are the real and beneficial party of interest because none of them have possession of the original note."  *Id.* Moreover, Plaintiffs allege that "it is uncertain who the Holder in due course is," and since "[o]nly the holder of the Note in due course may have such authority [to service the promissory note]," none of the Defendants can enforce the note.  Compl. 8–9.  Plaintiffs go on to allege "that the Defendant is acting in fraud to commit theft."  Compl. 16.

Plaintiffs also allege Defendants have violated federal and state law.  Specifically, Plaintiffs allege that one or more Defendants[3] violated the federal Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  Plaintiffs claim that such violations occurred when an unspecified Defendant "wish[ed] to use obfuscation to foreclose on a property through manipulation of the Deed of Trust without control or ownership of the Promissory note." Compl. 16.  Plaintiffs also allege that a Defendant or Defendants violated the FDCPA by failing to provide validation or verification of the debt, as Plaintiffs requested; by providing false representation or deceptive means to collect the debt; by attempting to deceive Plaintiffs into believing Defendant is a lender attempting to foreclose on the Plaintiffs' property; by failing to identify the true creditor; and by distributing written communications that created a false impression as to its source, authorization, or approval.  Compl. 17–19.

Finally, I construe Plaintiffs' request in their Prayer for Relief that the Court order Defendants "to remove any derogatory reporting of the debt from all credit reporting agencies" as a claim arising under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

---

[3] As discussed in Part III.C *infra*, Plaintiffs do not make their FDCPA allegations with any individualized particularity.  That is, the allegations in Counts 5 through 10 reference only "the Defendant"; it is unclear which Defendant (or Defendants) is alleged to have acted wrongfully.

- 4 -

In sum, liberally construed, the Plaintiffs' Complaint can be read to assert the following claims:

A) that Plaintiffs are due an order from the Court quieting title;

B) that the threatened foreclosure is improper because: 1) the original promissory note has not been produced by any Defendant; therefore, no Defendant has shown that it is a holder in due course, so no Defendant can service the promissory note; and 2) the lender has been paid in full because the promissory note was assigned, securitized, and not recorded;

C) that Defendants have violated federal statutory law, including the FDCPA and the FCRA.

## II. APPLICABLE LAW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). A court considering dismissal under Rule 12(b)(6) must take the factual allegations "in the light most favorable to the plaintiff." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991) (citing *Battlefield Builders, Inc. v. Swango*, 743 F.2d 1060, 1062 (4th Cir. 1984)). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, to survive a motion to dismiss, a complaint must contain enough factual allegations to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In evaluating "plausibility," the court may not rely on mere "labels and conclusions" or a plaintiff's "formulaic recitation of a cause of the elements of a cause of action . . . ." *Id.* at 555. Instead, the factual allegations must be enough to raise "a right to relief

- 5 -

above the speculative level . . . ." *Id.* Thus, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

When it comes to *pro se* filings like those in the instant case, in order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe pleadings liberally. *See, e.g.*, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (citation omitted). Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (affirming district court's dismissal of a plaintiff's fragmentary complaint). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (quoting *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978)). While the instant Complaint, of course, deserves a liberal construction under the generally liberal treatment of *pro se* filings, Plaintiffs in the instant matter do not purport to raise civil rights issues.

### III. DISCUSSION

Liberally construing Plaintiffs' Complaint, I now consider each theory advanced by Plaintiffs in support of why the foreclosure threatened by Defendants is improper. Again, Plaintiffs' *pro se* Complaint is not exactly straightforward, and it often times offers propositions that are plainly wrong as a matter of law; however, in order to facilitate an organized discussion, I have tried to arrange Plaintiffs' various arguments into sensible categories of claims.

- 6 -

## A. Quiet Title

Plaintiffs style their Complaint as a "Quiet Title Action." In Virginia, "an action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." *Maine v. Adams*, 277 Va. 230, 238, 672 S.E.2d 862, 866 (2009). A plaintiff asserting a claim for an order quieting title in Virginia, however, must assert that he has rights superior to others asserting an interest in the property. *Gallant v. Deutsche Bank Nat'l Trust Co.*, 766 F. Supp. 2d 714, 719 (W.D. Va. 2011); *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 700 (E.D. Va. 2010). In *Tapia*, the plaintiffs' quiet title claim was dismissed because plaintiffs had not alleged that they had fully satisfied their obligations under the note, or that their debt was otherwise cancelled or forgiven. *Tapia*, 718 F. Supp. 2d. at 700. In *Gallant*, the court dismissed the plaintiff's quiet title action because the complaint contained no facts supporting the plaintiff's claim to superior title.

In the instant matter, Plaintiffs' Complaint likewise asserts a right to quiet title in "a wholly conclusory fashion." *Gallant*, 766 F. Supp. 2d at 719. Plaintiffs have pleaded no facts that might demonstrate that they have a superior title to the property at issue. Indeed, Plaintiffs emphasize in their Complaint that THE ISSUE IS NOT WHETHER THERE IS A DEBT OWED, BUT TO WHOM IT IS OWED," and at the March 7th hearing, Mr. Blick asserted that the "point is [Plaintiffs] borrowed the money and [Plaintiffs] owe it, but not to these [Defendants]; they have all been paid." From the foregoing, it is clear that like the *Tapia* plaintiffs, the Blicks have failed to make allegations that would allow them to go forward with their quiet title claim. They simply do not assert that they have satisfied the obligations that they admit to having entered into, and they therefore fail to allege a superior interest in the property. I will dismiss Plaintiffs' quiet title claim.

Case 3:12-cv-00001-NKM-BWC   Document 23   Filed 03/27/12   Page 7 of 14   Pageid#: 321

## B. Improper Foreclosure Claims

### 1. The Original "Wet Ink" Promissory Note

Plaintiffs claim that no evidence exists to prove that the owner of the original note, Best Rate, transferred it to Deutsche Bank. According to Plaintiffs, therefore, "none of the Defendants are the real and beneficial party of interest because none of them have possession of the original note." Moreover, according to Plaintiffs, because no Defendant has produced the promissory note, no Defendant has shown that it is a real party of interest or a holder in due course. And since, according to Plaintiffs, only a holder in due course can service the promissory note, the Defendants lack standing to enforce the note.

Even if Defendants actually and permanently did lose the note, however, Plaintiffs' "wet ink" claim is not well-grounded in Virginia law. On the contrary, "[c]ourts have routinely rejected the . . . theory," otherwise known as the "show me the note" theory, which "began circulating through courts across the country in 2009." *Gallant*, 766 F. Supp. 2d at 720 (citing *Stein v. Chase Home Fin., LLC*, Civ. No. 09–1995, 2010 WL 4736828 (D. Minn. Aug. 13, 2010)).

As Judge Conrad noted in *Gallant*, in Virginia,

> [i]f a note or other evidence of indebtedness secured by a deed of trust is lost or for any reason cannot be produced . . . , the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the mailing of the notice.

*Id.* at 721 (quoting Va. Code § 55–59.1(B)).

Like the claims made by the *Gallant* plaintiffs, the Blicks' related claims alleging that Defendants lack "standing to enforce the Note," do not withstand any serious scrutiny. As Defendants have asserted, the Commonwealth of Virginia operates under non-judicial

foreclosure laws.  That is, "[s]ections 55–59.1 through 55–59.4 [of the Virginia Code], which set forth the procedural requirements for a non-judicial foreclosure, do not require an interested party to prove 'standing' in a court of law before initiating the foreclosure process."  *Gallant*, 766 F. Supp. 2d at 721 (quoting *Tapia*, 718 F. Supp. 2d at 698)).  Accordingly, I will dismiss Plaintiffs' claims.

### 2. Securitization, Assignment, and Failure to Record

Plaintiffs also argue that because Best Rate sold the promissory note to Long Beach Mortgage Company, and the note then founds its way to Deutsche Bank National Trust Company as Trustee for Long Beach Mortgage Loan Trust 2005-3 or as Trustee for Long Beach Mortgage Loan Trust 2005 WL-3, "it is evident that Long Beach Mortgage Company sold [the Blicks'] Promissory Note and way paid in full."  Compl. 10.  Because Best Rate was paid in full, it must "instruct the Trustee to re-convey the property."  Compl. 11.

Plaintiffs have cited no legal authority for their proposition, and I have found none.  In fact, "[t]here is no legal authority that the sale or pooling of investment interest in an underlying note can relieve borrowers of their mortgage obligations or extinguish a secured party's rights to foreclose on secured property."  *Zambrano v. HSBC Bank USA, Inc.*, Civil Action No. 01:09–cv– 996, 2010 WL 2105164, at *2 (E.D. Va. May 25, 2010), *aff'd*, 442 Fed. App'x. 861 (4th Cir. 2011) (per curiam).  On the contrary, as Defendants have noted in their Memorandum in Support of their Motion to Dismiss, federal statutes, including the Securities Act of 1933, 48 Stat. 74, and the Secondary Mortgage Market Enhancement Act of 1984, 15 U.S.C. § 77r-1(A)(1)(B), provide for the purchase and investment in mortgage related securities.  Such statutes, of course, do not

also provide that once a mortgage related security is sold or securitized, the underlying debt obligation is nullified or voided.[4]

Additionally, as recently stated in this district, "the Fourth Circuit has rejected the notion that the validity of a note or deed of trust is compromised by transfer to another party." *McFadden v. Fannie Mae*, No. 7:11cv335, 2012 WL 37169, at *5 (W.D. Va. Jan. 9, 2012) (citing *Horvath v. Bank of N.Y., N.A.*, 641 F.3d 617, 619 (4th Cir. 2011)). Moreover, as other courts have made clear, the holder of a blank-indorsed note like the one at issue can enforce the note pursuant to the deed of trust, and is therefore entitled to foreclose on the property. *See Larota-Florez v. Goldman Sachs Mortg. Co.*, 719 F. Supp. 2d 636, 640 (E.D. Va. 2010), *aff'd*, 441 Fed. App'x 202 (4th Cir. 2011) (per curiam). Furthermore, neither the note, nor the deed of trust, nor any Virginia law cited by Plaintiffs requires that assignments of transfers of such instruments be recorded in the county land records. *See Daugherty v. Diment*, 385 S.E.2d 572, 574–575 (1989) (noting that the assignor was "not required to obtain the consent of anyone" when the subject contract included a clause specifying free assignability). I will dismiss Plaintiffs' claims to the contrary.

---

[4] At the March 7th hearing, Mr. Blick strenuously argued that the mortgage was securitized and placed into a Real Estate Mortgage Investment Conduit (REMIC) pursuant to a "pooling agreement." Mr. Blick claimed that the pooling agreement required Plaintiffs' note to be transferred into a trust by a certain closing date. Mr. Blick further argued that his note "never made it" to the trust, as required by the pooling agreement and by the laws governing trusts in the state of New York. Mr. Blick went on to say that that such a failure defrauded the certificate-holders.

In my colloquy with Mr. Blick, I asked him how his allegations would relieve him and Mrs. Blick of their debt obligations. Mr. Blick replied that he and Mrs. Blick would not, in fact, be relieved of their obligations, but nonetheless the certificate-holders have been defrauded, and Defendants are perpetrating a fraud on the Court.

As I noted at the hearing, the allegedly defrauded certificate-holders have not complained to this Court. Moreover, the Blicks do not allege that they are members of this group of allegedly defrauded certificate-holders, and further do not claim to be acting on any certificate-holder's behalf. Rather, Plaintiffs acknowledge that they owe considerable sums of money under the loan. Although Plaintiffs claim to be unsure exactly whom to pay, they do not claim that they are receiving—or have ever received—demands for payment from multiple actors. When I asked Mr. Blick if he would be in his presently unfortunate situation if he had paid his debt, he merely replied that paying those debts "would be a travesty" because the note never made it to the trust. I reiterate, however, that Plaintiffs' allegations, even if true, appear to have absolutely no injurious effect on Plaintiffs themselves. Such allegations therefore do not provide the Plaintiffs with a legitimate cause of action, and clearly such allegations do not void Plaintiffs' obligation to repay their various debts.

- 10 -

## C. The Fair Debt Collection Practices Act

Plaintiffs allege a variety of claims said to arise under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. *See* Compl. 15–20. At the outset, I note that Plaintiffs' claims alleging fraud or false or misleading representations (Counts 5, 8, and 10 in the Complaint) should be dismissed because Plaintiffs have failed to comply with Rule 9(b) of the Federal Rules of Civil Procedure, requiring that "the circumstances constituting fraud . . . shall be stated with particularity." Furthermore, Plaintiffs have failed to allege their claims for fraud with particularity as to each Defendant. *See, e.g.*, *Dealers Supply Co. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 590 (M.D.N.C. 2004) ("Courts have been quick to reject pleadings in which multiple defendants are lumped together and in which no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made . . . ."). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999).

Even liberally construed, Plaintiffs' Complaint fails to provide the particular Defendants with notice regarding which claim is alleged against whom. *See, e.g.*, Compl. 15 ("The Plaintiffs re alleging fraud committed by the Defendant."). In none of the aforementioned counts do Plaintiffs state with any particularity which Defendant is alleged to have committed the fraud or misrepresentation. Pursuant to Rule 9(b) alone, then, dismissing Counts 5, 8, and 10 of the Complaint would be proper. As will be discussed immediately below, however, Rule 9(b) is not the only justification for my dismissal of Plaintiffs' FDCPA claims.

\* \* \*

I dispense with undertaking a labored analysis of Plaintiffs' sundry FDCPA claims that might pertain to JPMC and Deutsche Bank because "creditors, mortgag[ees], and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA." *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 647–48 (E.D. Va. 2010), *aff'd* 442 Fed. App'x 816 (4th Cir. 2011) (per curiam). In general, "a company's own efforts to collect overdue payments from its own delinquent clients would not ordinarily make it a 'debt collector' under the [FDCPA], which specifically refers to those who collect debts 'owed or due or asserted to be owed or due *another*.'" *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 379 n.2 (4th Cir. 2006) (quoting 15 U.S.C. § 1692a(6)) (emphasis added). Many other courts have used similar language to confirm that Congress only intended the FDCPA to apply to debt collectors, and not creditors themselves. *See, e.g.*, *Areebuddin v. Onewest Bank, F.S.B.*, Civil Action No. 1:09–cv–1083, 2010 WL 1229233, at *6 (E.D. Va. March 24, 2010); S*cott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp. 2d 709, 717 (E.D. Va. 2003).

As defined in the FDCPA, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Moreover,

> [t]he term [debt collector] does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

As many courts have held, a servicer of a loan such as JPMC is not a "debt collector" under the FDCPA, and Plaintiffs' claims against it fail for that reason. To the extent Plaintiffs assert

- 12 -

FDCPA claims against Deutsche Bank, those claims also fail because Deutsche Bank is not alleged to have been attempting to collect a debt for another party. Because Deutsche Bank is therefore not a debt collector for FDCPA purposes, Plaintiffs' claims fail.

## D. The Fair Credit Reporting Act

In their Prayer for Relief, Plaintiffs ask the Court for an order requiring Defendants to "remove any derogatory reporting of the debt from all credit reporting agencies." Compl. 21. I liberally construe Plaintiffs' request as a claim arising under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Plaintiffs' claim, however, fails. As Defendants have noted, the FCRA does not provide a private right of action for a credit furnisher's alleged failure to report accurate information. Rather, a furnisher only faces liability if a complaint alleges that a furnisher failed to conduct a reasonable investigation of a consumer's dispute after being notified of a dispute directly by a credit reporting agency. *See* 15 U.S.C. § 1681s–2(b)(1)(B); *Chiang v. MBNA*, 620 F.3d 30 (1st Cir. 2010) (holding a notice of disputed information provided directly by a consumer to a data furnisher does not trigger a furnisher's investigation duties under the FCRA). Plaintiffs' Complaint fails to allege that any Defendant received notification from a credit reporting agency regarding Plaintiffs' dispute, and to the extent alleged, the FCRA claims fail.

Finally, to the extent Plaintiffs' claims regarding derogatory reporting are construed to be assert state law claims, then those claims are expressly preempted by 15 U.S.C. § 1681t(b)(1)(F). "[Plaintiff's state law claims], in the main, are preempted by . . . the FCRA's preemption provision." *Ross v. F.D.I.C.*, 625 F.3d 808, 810–15 (4th Cir. 2010). The Fourth Circuit, in *Ross*, thoroughly discussed the FCRA and preemption, touching on some provisions of the FCRA that

expressly authorize state law claims[5]; however, Plaintiffs' cursory mention of credit reporting in the Complaint cannot be read to implicate any of the exceptions discussed in *Ross*.

## IV. CONCLUSION

Even giving Plaintiffs' Complaint the liberal construction that the Court must, the Complaint cannot withstand Defendants' respective Motions to Dismiss. Plaintiffs' Quiet Title action fails as a matter of law since Plaintiffs have not asserted any superior claim of title. Moreover, none of Plaintiffs' arguments respecting the alleged unenforceability of the promissory note, or the deed of trust, or both, withstands any legal scrutiny. Cases like this have been arising in various forms throughout the country, and I have found no statutory or judicial support that would allow Plaintiffs' claims to continue. Plaintiffs' statutory claims fare no better, as each Defendant is either expressly exempt from the FDCPA, or is not alleged to have engaged in "debt collection" prohibited by the Act, or is protected by the heightened pleading standard found in Rule 9(b) of the Federal Rules of Civil Procedure. Finally, to the extent Plaintiffs' Prayer for Relief can be read to make a claim under the FCRA, that claim fails because the FCRA, which expressly preempts most state law in the field, does not provide Plaintiffs a private right of action. Accordingly, I will dismiss Plaintiffs' Complaint in its entirety, with prejudice.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all parties of record.

Entered this 27th day of March, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[5] The plaintiff in *Ross* sought to bring claims under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"). 625 F.3d at 811.

- 14 -